IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

MOHAMED HANIFF KHAN [1],

Defendant.

CRIMINAL NO. 06-012 (JAG)

# **REPORT AND RECOMMENDATION**

## **INTRODUCTION**

On August 15, 2006, defendant Mohamed Haniff Khan ("defendant Khan") filed a Motion to Dismiss (Docket No. 37) which was referred to this Magistrate Judge on August 16, 2006 (Docket Nos. 38, 39). On August 28, 2006, the government filed a response. (Docket No. 40).

## **BACKGROUND**

Defendant Khan was charged in a two-counts Indictment with: (Count One), a violation to 18 U.S.C. §1324(a)(1)(A)(v)(I) and (B)(i), that is, to transport, move and attempt to transport and move within the United States, at least four (4) aliens, knowing and in reckless disregard of the fact that said aliens had come to, entered and remained in the United States in violation of law; and (Count Two), a violation to 18 U.S.C. §1324(a)(1)(A)(ii) and (B)(i), that is, knowingly transport, move and attempt to transport and move within the United States, at least four (4) aliens, for purpose of commercial advantage and private financial gain.

Defendant Khan submits a plethora of issues in the Motion to Dismiss, without any jurisprudence in support thereof, including numerous claims which should be more

United States v. Mohamed Haniff Khan
Criminal No. 06-12(JAG)
Report and Recommendation
Page No. 2

appropriately addressed in a motion to suppress on the voluntariness of his statement or probable cause for his initial detention by state authorities. Other issues discussed below lack merit for purposes of defendant Khan's request for dismissal.

Among the issues raised by defendant Khan are the following:

1) Defendant was in possession of a valid visa to be in the United States and was illegally detained on December 20, 2005, because of his national origin.

2) Defendant was illegally arrested because he did not commit a violation of law in the presence of law enforcement agents and they lacked sufficient information for reasonable suspicion or probable cause.

3) Defendant was profiled racially and detained because of his East Indian origin and being from Guyana.

4) Defendant was detained for seven (7) days without being brought to Court in violation of Fed.R.Crim.P. 5(a)(1)(A); 5).

5) Defendant was not read his rights nor given Miranda warnings and his request for assistance of a lawyer was ignored.

6) The statement provided and signed on December 29, 2005 by defendant was produced after being refused an interview with a lawyer, being harassed and humiliated and held from the morning until the night without food or provided with food he could not eat because of his religious beliefs.

7) Defendant's request for the Guyanese Consul to be informed of his detention was refused in violation of the Vienna Convention on Consular Relations.

8) The Warning as to Rights Interview Log dated December 20, 2005, provided through discovery, contains the interviewers name and date, but the rest of the log is in blank, not indicating whether the interview was concluded nor at what time and if a statement was made.

9) Another Warnings as to Rights Interview Log at 10:30 p.m. fails to provide same information.

10) ICE Record of Sworn Statement by defendant Khan on December 20, 2005, before Agent Abel Nasser, shows a printed form that on the last page (page fourteen) with the signatures of Khan, Crespo and Nasser on December 21, 2005 at 1:00 a.m.

11) Defendant's interrogation began on December 20, 2005 at 5:00 a.m. in Yabucoa and ended in ICE San Patricio some twenty (20) hours later, December 21, 2005 at 1:00 a.m.

12) The sworn statement is filled with questions not made to defendant and answers he did not make, in a handwriting that is not his and many items are not true.

13) Another document is a photographic line-up which defendant signed but did not prepare.

14) Defendant Khan's right for a speedy trial has been violated.

15) Defendant believes he was illegally arrested and because of the way he was treated afterwards the statement should be suppressed and the case dismissed.

16-18) Defendant refers to his entitlement to the rights under the Vienna Convention, the Constitution and for a jury trial.

## LEGAL DISCUSSION

**A.     Motions to Suppress Claims.**

**1. Involuntary Statement**.

First, we note that defendant Khan's issues on the statement and the conditions under which it was obtained as coercive, is a claim for suppression of said evidence. The Supreme Court has confined the voluntariness concept by holding that only [statements] procured by coercive official tactics should be excluded as involuntary." United States v. Byram, 145 F.3d 405, 407 (1st Cir.1998) (*citing* Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515 473 (1986).  *See* United States v. Flemmi,  225 F.3d 78, 91 (1st Cir. 2000).

A party seeking an evidentiary hearing must present some evidence, as generalized allegations of misconduct by the government, are not sufficient to warrant a hearing. *See* Wade v. United States, 504 U.S. 181, 186, 112 S.Ct. 1840, 1844 (1992). A hearing on defendant Khan's claims regarding the voluntariness of the statement and probable cause or reasonable suspicion to arrest or detain him may be held on a properly argued and legally sustained Motion to Suppress.

As such, it is recommended that items 1-2, 4-6, 8-12, and 15 of defendant Khan's Motion to Dismiss be DENIED without prejudice.

## 2. Unnecessary Delay in bringing Defendant before the Court.

Defendant Khan states there was an unnecessary delay in bringing him before the Court for initial appearance in violation of Fed.R.Crim.P. 5(a)(1)(A)(5).

When determining whether there has been a violation of Rule 5(a) of the Federal Rules of Criminal Procedure, which relates to initial appearances, one must look at the reason for the delay. *See* United States v. Purvis, 768 F.2d 1237, 1239 (11th Cir. 1985). However, a delay of a week between an arrest and first appearance has been held to not be a violation, even when that arrest follows a lengthy detention by the INS [now Department of Homeland Security and ICE]. *See* United States v. Noel, 231 F.3d 833, 837 (11th Cir. 2000).

The Court of Appeals for the First Circuit has stated that a defendant's detention for 28 hours before he was brought before a Magistrate Judge did not render his statements to law enforcement officials involuntary, absent evidence of physical or psychological coercion or specification by defendant as to how delay in his initial appearance rendered his statement involuntary. United States v. Rosario-Díaz, 202 F.3d 54 (1st Cir. 2000). Appearing before a magistrate is only one of several factors to be considered in determining voluntariness. *See* 18 U.S.C. § 3501(b) (listing several illustrative and nonconclusive factors). Rosario Díaz, 202 F.3d at 70. A lapse of time between arrest and initial appearance, standing alone, does not require the exclusion of a statement made during this period. *See* United States v. Rubio, 709 F.2d 146, 153 (2d Cir. 1983). "It is not the lapse of time, but the use of time, ... to employ the condemned psychologically coercive or third degree practices [of interrogators, which is

proscribed]." *Id.* quoting from United States v. Marrero, 450 F.2d 373, 376 (2d Cir. 1971). United States v. Beltrán, 761 F.2d 1, 8 (1st Cir. 1985).

This claim should be raised as part of a motion to suppress because defendant Khan would need to establish this factor of delay for the initial appearance when discussing voluntariness of the statements at a suppression motion. Accordingly, there is no need to delve any further on the matter improperly presented through a motion to dismiss.

Hence, it is recommended that any claims for dismissal pursuant to any unnecessary delay be DENIED without prejudice.

**B. Motion to Dismiss Claims**.

**1. Speedy Trial Violations**.

Defendant submits speedy trial violations should entitle him to dismissal. The Speedy Trial Act requires a trial to begin within seventy (70) days of the filing of an Information or Indictment or the defendant's initial appearance. 18 U.S.C. § 3161(c)(1). The Act acknowledges the variety of criminal cases and that in some cases there may often be good reasons for a longer delay. The Supreme Court has construed the Speedy Trial Act provides the necessary flexibility and includes a long and detailed list of periods of delay that are excluded in computing the time within which the trial must start. *See* 18 U.S.C. § 3161(h). For example, the Act excludes delays resulting from: any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning

the defendant is actually under advisement by the court; and any period of delay resulting from a continuance ... on the basis of findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial, among others. The factors, among others, which a judge shall consider . . . exclude time that would deny the defendant reasonable time to obtain counsel. *See* United States v. Rodríguez, 2006 WL 2143126 (1st Cir. 2006).

Defendant Khan submits a violation of speedy trial upon a purported calculation of the seventy (70) days from the date he was originally detained until he last appeared before the Court on January 19, 2006. No consideration is provided as to excludable time allowed by the Speedy Trial Act, motion filing and rulings thereunder, change of counsel and other factors.

The court record and the validation report on speedy trial provided by the Clerk of the Court establish no speedy trial violation. Additionally, the government's response submits a chart of motion filing by defendant that should be considered excludable under the Speedy Trial. It is also evidently clear from the record defendant Khan's speedy trial clock initiated with the filing of the Indictment and stopped upon intervals from his former counsel's withdrawal and substitution thereafter, his motion filing as to the Motion to Dismiss, which reasonably allows consideration under advisement upon the government's filing of its reply and other excludables.

Since defendant Khan has not been able to support the claim that a speedy trial violation indeed occurred, it is recommended that the Motion to Dismiss on grounds of such violation be DENIED.

United States v. Mohamed Haniff Khan
Criminal No. 06-12(JAG)
Report and Recommendation
Page No. 8

## 2. Vienna Convention on Consular Relations Violations.

Defendant Khan also files claims for dismissal grounded on alleged violations of the Vienna Convention on Consular Relations.[1]  Article 36 of the Vienna Convention on Consular Relations requires that local authorities inform detained or arrested foreigners of the right to contact their consulate for assistance. *See* United States v. Duarte-Acero, 296 F.3d 1277, 1281 (11th Cir. 2002).  Although the United States is a party to said agreement, defendant Khan has not provided any information establishing when Guyana, defendant Khan's nation of origin, became a signatory host to said treaty.  Notwithstanding, even taken as true that there was non-compliance with the notice requirement, it has been construed the Vienna Convention does not provide a enforceable relief for individual defendant's rights.

The preamble of the Convention itself "disclaims any intent to create individual rights, stating that its purpose 'is not to benefit individuals but to ensure the efficient performance of functions by consular posts.' " *Id*. at 1281-82 (quoting the Preamble to the Vienna Convention).  Moreover, the State Department has expressed the view "that the only remedies for a violation of the Vienna Convention are diplomatic, political, or derived from international law." *Id*.[2]

Additionally, it should be noted that the U.S. Supreme Court in granting *certiorari* in a case addressing whether the Convention creates enforceable individual rights and whether

---

[1] Defendant Khan's motion is referring to 21 U.S.T. 77, 100-101, T.I.A.S. No. 6820, Multilateral Vienna Convention on Consular Relations and Optional Protocol on Disputes.

[2] See Hinojosa v. State, 4 S.W.3d 240] (Tex.Crim.App. Oct. 27, 1999) (holding that treaties operate as contracts among nations; thus, offended nation, not individual, must seek redress for violation of sovereign interests).

United States v. Mohamed Haniff Khan
Criminal No. 06-12(JAG)
Report and Recommendation
Page No. 9

suppression is the proper remedy for violations found Article 36(1)(b) of the Vienna Convention on Consular Relations provided that, if a person detained by a foreign country "so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State" of such detention, and "inform the [detainee] of his rights under this sub-paragraph." It also indicated that neither the Convention itself nor this Court's precedents applying the exclusionary rule support suppression of a defendant's statements to police as a remedy for an Article 36 violation. Sánchez-Llamas v. Oregon, --- U.S. ----, 126 S.Ct. 2669 (2005) (finding no federal supervision is allowed to impose upon state courts remedy of suppression of evidence, for state police officers' violations of Vienna Convention).

The Court of Appeals for the First Circuit has also addressed this issue by finding that, irrespective of whether the Vienna Convention or the Bilateral Convention on Consular Relations with the People's Republic of China create individual rights to consular notification and access, the appropriate remedies for failure to afford such notification and access do not include suppression of evidence or dismissal of an Indictment against a foreign national. United States v. Li, 206 F.3d 56 (1st Cir. 2000).

In view of the foregoing, it is recommended that defendant Khan's claim for dismissal on a possible violation of the Vienna Convention be DENIED.

United States v. Mohamed Haniff Khan
Criminal No. 06-12(JAG)
Report and Recommendation
Page No. 10

### 3. Racial Profiling.

Defendant Khan submits a general statement that he was initially detained because of his East Indian origin and racial profiling.[3]

"[B]ald assertions of racist motivations on the part of [an arresting officer] do not render his conduct unconstitutional. The Supreme Court rejected 'the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of the law has occurred.' " Conrod v. Davis, 120 F.3d 92, 96 (8th Cir. 1997) (quoting Whren v. United States, 517 U.S. 806, 811 (1996)); *see also* Sheik-Abdi v. McClellan, 37 F.3d 1240, 1247 (7th Cir. 1994); Smith v. Gonzales, 670 F.2d 522, 527 (5th Cir. 1982).

Furthermore, absent any evidence of outrageous conduct that shocked the conscience of the court, allegation that state trooper engaged in racial profiling in stopping defendant's speeding car did not establish a due process violation. United States v. Williams, 431 F.3d 296 (8th Cir. 2005). Even if there was a due process violation, it is uncertain that dismissal is an appropriate remedy. *See* United States v. Armstrong, 517 U.S. 456, 461 n. 2, 116 S.Ct. 1480 (1996) (Court has not decided whether dismissal of indictment or other sanction is proper remedy if defendant has been victim of prosecution based on race).[4]

---

[3] The United States Department of Justice defines racial profiling as a practice which [a]t its core concerns the invidious use of race or ethnicity as a criterion in conducting stops, searches and other law enforcement investigative procedures. It is premised on the erroneous assumption that any particular individual of one race or ethnicity is more likely to engage in misconduct than any particular individual of another race or ethnicity. Civil Rights Div., U.S. Dep't of Justice, Guidance Regarding the Use of Race by Federal Law Enforcement Agencies 1 (2003).

[4] It has long been held that an illegal search or seizure is not justified by the contraband it uncovers. *See* Byars v. United States, 273 U.S. 28, 29, 47 S.Ct. 248 (1927) ("Nor is it material that the search was successful in revealing evidence of a violation of a federal statute. A search prosecuted in violation of the Constitution is not made lawful by what it brings to light ...."). The Fourth Amendment "guarantee of protection against unreasonable searches and seizures extends to the innocent

Whether a defendant was stopped for racially motivated reasons is completely distinct from the question of whether the police had probable cause for the stop. Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769 (1996)(the Supreme Court held that police can temporarily detain a motorist when they have probable cause to believe that he violated a traffic ordinance, even if the police have some other motivation to stop the motorist). The constitutional reasonableness of a traffic stop does not depend on the intent of the officers involved and therefore, the officers' racially discriminatory motivations cannot invalidate an objectively reasonable stop. *Id.* As long as the officers had probable cause for believing that a traffic violation occurred, the stop was reasonable. Id. at 810, 116 S.Ct. 1769. Gibson v. Superintendent of NJ Dept. of Law and Public Safety-Division of State Police, 411 F.3d 427, 440 (3d Cir. 2005). *Cf.* United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574 (1975)(the targeting of a criminal suspect solely by reference to the subject's race violates the constitution).

Under the Equal Protection Clause the Constitution requires that all similarly situated persons should be treated alike by state actors. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985). Still, an alleged victim must prove by direct, circumstantial, or statistical evidence, that he/she was a target of racial profiling and mere speculation, without more, that police action incurred because of racial bias is inadequate to

---

and guilty alike." McDonald v. United States, 335 U.S. 451, 453, 69 S.Ct. 191 (1948). U.S. v. Herrera Martínez, 354 F.3d 932, 937 (8th Cir. 2004).

United States v. Mohamed Haniff Khan
Criminal No. 06-12(JAG)
Report and Recommendation
Page No. 12

support a racial profiling charge. Moreover, the selection of an African-American suspect for questioning "because his clothing, appearance, location, and race coincided with published description "patently was held not comprise "illegal 'racial targeting' or 'racial profiling.' " United States v. Waldon, 206 F.3d 597, 604 (6th Cir. 2000) (further asserting that "[c]ommon sense dictates that, when determining whom to approach as a suspect of criminal wrongdoing, a police officer may legitimately consider race as a factor if descriptions of the perpetrator known to the officer include race.").

Ethnicity sometimes has a proper limited role in law enforcement decision making, particularly when dealing with illegal aliens. The Court of Appeals for the First Circuit in affirming the district court denial of an evidentiary hearing on a motion to suppress found the court did not abuse its discretion when based on bare speculation that agents may have considered defendant's race in their decision to stop him. *See* United States v. Barrow, 448 F.3d 37, 41-42 (1st Cir. 2006); *see also* Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 405 (5th Cir. 1999) (finding bare allegations of discrimination insufficient to avoid summary judgment).

In the instant case, the affidavit in support of the complaint sworn by Agent Abel Nasser on December 27, 2005, provides that police officers from the Yabucoa Municipal Police Department observed on December 20, 2005, around 4:30 a.m., several people walking with and without luggage on Road No. 906, near Guayanés Beach, in Yabucoa, Puerto Rico. They had previously detained several individuals who had claimed to be illegally in the United States.

United States v. Mohamed Haniff Khan
Criminal No. 06-12(JAG)
Report and Recommendation
Page No. 13

The agents also witnessed a taxi with five (5) people which they stopped. The driver, Agapito Esquilín, who advised the police officers that defendant Khan, along with another tall male, had contracted his taxi from Fajardo Inn to the Yabucoa Area. The officers detained the driver, defendant Khan and five other individuals who claimed to be illegal aliens.

Under the above contention, it is recommended that defendant Khan's attribution of his detention because of racial profiling as included in his Motion to Dismiss be DENIED.

### 4. Other Claims.

Finally, items 16-18 of defendant's Motion to Dismiss are merely statements by counsel which do not address with particularity any supporting ground for dismissal and/or suppression, but discovery materials produced by the government. Accordingly, no recommendation on these items is deemed necessary.

### CONCLUSION

In light of the above discussed, it is recommended that defendant Khans' Motion to Dismiss be DENIED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role

reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of August of 2006.

                          S/CAMILLE L. VELEZ-RIVE
                          CAMILLE L. VELEZ-RIVE
                          UNITED STATES MAGISTRATE JUDGE